## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:20cv61302

POINT CONVERSIONS, LLC.,
A Delaware Limited Liability Company

      Plaintiff,                                 **DEMAND FOR JURY TRIAL**

v.

DEERFIELD HOTEL ONE, LLC d/b/a
QUALITY SUITES
A Florida Limited Liability Company

      Defendant.

_____/

## COMPLAINT

Plaintiff, POINT CONVERSIONS, LLC., a Delaware Limited Liability Company

("Point Conversions" or "PC"), brings this action and files suit against Defendant,

DEERFIELD HOTEL ONE, LLC d/b/a Quality Inn & Suites, a Florida Limited Liability

Company ("Deerfield") and alleges the following:

## THE PARTIES

1.  Point Conversions is a Delaware limited liability company engaged in the business

of technology development and software.

2.  Deerfield Hotel One, LLC. is a Florida registered limited liability company with its

principal place of business at 1040 E. Newport Center Dr., Deerfield Beach, Florida 33442

engaged in the business of hospitality; and operates a hotel in Deerfield Beach, Florida.

1

## JURISDICTION AND VENUE

3.  This Court has original jurisdiction pursuant to *28 U.S.C. §§ 1331 and 1338(a).*[1]

4.  Deerfield is subject to personal jurisdiction in this judicial district because Deerfield resides in this district, has purposefully availed itself of the privilege of doing business in this judicial district, operated, conducted, engaged in, or carried on a business or business venture in this state having an office or agency in this state, committed tortious acts within this state, and has sufficient minimum contacts with Florida to render the exercise of jurisdiction over Deerfield compatible with due process.

5.  Venue is proper in this judicial district pursuant to §§ 28 U.S.C. 1391(b)(1), 1391(b)(2), and 1391(c) as Deerfield conducts and transacts substantial business in this judicial district, a substantial portion of the events and conduct giving rise to the violations complained of in this action occurred in this judicial district, Deerfield conducts business with consumers in this judicial district, and Deerfield's resides in this judicial district.

## FACTUAL ALLEGATIONS

*I. Point Conversions*

6.  On or about September 1, 2017, PC entered into an agreement with JBSHBM, LLC., ("JB") whereby PC obtained an exclusive license for software ("Exclusive Software

---

[1] NB. PC originally filed these claims in The Circuit Court of the Seventeenth Judicial Circuit in and for Broward County Florida (state court). After briefing the issue, on January 15, 2020, The Honorable Judge Nicholas Lopane entered an amended order granting Deerfield's motion to dismiss for lack of subject matter jurisdiction stating in part: "This Court lacks subject matter jurisdiction over all Plaintiff's causes of action because each of Point Conversions' claims requires determination of the core patent issues which this Courts finds is reserved exclusively to the jurisdiction of the Federal Courts under 28 U.S.C. 1338(a)." (**Exhibit 130**). Accordingly, PC has filed suit here.

License" or "ESL") that implements technology protected by a set of patents ("Patents") owned by JBSHMB, LLC *[see list of patents with the application number, patent number, and title along with redacted license as* **Exhibit 131]**

7.  PC's Exclusive Software Licenses grants PC the exclusive right to develop, produce, and monetize software that implements innovations covered under the Patents.

8.  The Patents are encumbered by PC's Exclusive Software License and any PC End-User Patent Release granted under the Exclusive Software License.

9.  PC is an exclusive licensee of a specific field of use for License Covered Activities while lacking substantial rights to enforce Patent Act violations which is consistent with PC's focus is on software development and marketing.

10. PC's rights establish that PC is the only company permitted to provide software that functionally performs "License-Covered-Activities", defined as activities falling within scope of any of the claims of the Patents per PC's license.

11. PC's property rights establish that PC is the only company permitted to provide software that functionally performs the License-Covered-Activities.

12. Licensed-Covered-Activities conducted adverse to PC's exclusive property rights harms PC's legal property interest, goodwill, business interests, and hampers marketability of PC's software, Point Boundaries.

13. Actions of transferring reward points to and from the Choice Reward Program via software require the performance of License-Covered-Activities.  (**Exhibits 132-137**)

10. Subsequent to and because of PC acquiring the ESL, PC created software called, "Point Boundaries."

11. PC negotiated for the PC End-User Patent Release included in the EULA with recognition that full implementation of software features under the ESL require access to back-end reward program systems which are controlled by third parties.

12. Any entity, including Deerfield, that benefits from Third-Party software that performs Licensed-Covered-Activities in contradiction to PC's Exclusive Software License receives a benefit for which it is not legally entitled.

13. Any entity, including Deerfield, that benefits by directing customers to utilize Third-Party software that implements Licensed-Covered-Activities in contradiction to PC's Exclusive Software License receives a benefit for which it is not legally entitled.

14. Any entity, including Deerfield, that benefits from commercial goods, such as allegedly transferrable points, which are only transferrable through performance of Licensed-Covered-Activities in contradiction to PC's Exclusive Software License, receives a benefit for which it is not legally entitled.

*II. Deerfield*

15.  Deerfield is an independently owned franchisee of Choice Hotels International Inc. ("Choice").

16. Deerfield does not possess a license to the JB Patents nor do they use PC's software. Instead, Deerfield is trained in, uses, and benefits from the "ChoiceAdvantage" software.

17.  Through Choice, Deerfield provides a "loyalty program" which also offers guests the ability to earn airline miles for qualifying stays redeemable for flights with various airline partners as well as redeem points for gift certificates at participating retailers.

18. These programs allow Deerfield to have lower costs, have more targeted marketing campaigns to their consumers, and help deliver more business to Deerfield.

19. Deerfield advertises and provides reward points (i.e., Choice Privilege Reward Points) in commence alleged to be transferrable across program boundaries through the use of software.

20. Deerfield receives financial benefit from providing transferrable reward points to customers, where the transferability adds value to these points.

21. Deerfield incentivizes customers to stay at its hotel, instead of one of its competitors by providing the allegedly transferrable points thereby increasing its revenues and occupancy rate.

22. Deerfield permits customers to stay in rooms paid for through the redemption of points; many of which have been converted across program boundaries through the use of software.

23. Deerfield receives compensation for rooms that customers occupied through the redemption of points; as well as, benefits from customers that converted points from a different reward program into Choice Points which are redeemed for stays at Deerfield. Deerfield also benefits from the advertisements Choice provides and Choice's "goodwill" which has a value and a benefit to Deerfield.

24. Deerfield was aware of the JB Patents and PC License and software prior to the filing of this suit; and continue using unauthorized software.

25. Deerfield provides their customers with points allegedly transferrable; and encourages their customers to perform Licensed-Covered-Activities involving allegedly transferrable points.

26. Deerfield is aware of allegations that their customers are preforming Licensed-Covered-Activities when these customers utilize allegedly transferrable points.

27. Deerfield does not inform their customers were of PC's Exclusive Software License; the Patents; or Point Boundaries.

28. Deerfield, as a franchisee of Choice, participates in the Choice Privilege Rewards Program (or "CPR Program").

29. The CPR Program is a loyalty program that offers members benefits ranging from everyday rewards to experiences that has approximately 40 million members ("Members") which drives customers to stay at Deerfield.

30. Deerfield's occupancy rate is positively impacted by the Members and the CPR Program which increases revenue; and otherwise receives value from the CPR Program.

31. The benefits gained by Deerfield are both monetary/pecuniary and intangible[2].

32. Points Members earn for stays at the hotel incentivizes the Members to stay at Deerfield instead of staying at a competing hotel for which no Points are earned.

33. This loyalty program in part, uses Choice Privilege Reward Points ("Points") whereby Members allegedly earn transferrable Points for stays at Deerfield.

---

[2] *See e.g. In re Corbin's Estate*, 391 So.2d 731 (1980).

34. The CPR Program utilizes software to perform Licensed-Covered-Activities in violation of PC's Exclusive Software License.

35. When Deerfield's customers use the CPR Program that utilizes software to perform Licensed-Covered-Activities, this violates PC's license and intellectual property rights.

36.  Deerfield does not tell its customers about PC, its software, or its license.

37.  Deerfield does not communicate with their customers about PC's software because they are aware it may affect their profits and benefits that otherwise do not belong to them.

38. The Choice Privilege Reward Points used by Deerfield are advertised as being exchangeable with reward program points of different programs.

39. Reward points that can be exchanged or used for different reward programs has value and has a greater than those that cannot.

40. Members utilize software of the CPR Program to perform Licensed-Covered-Activities as directed by the Deerfield and Choice. Members benefit from utilizing software of the CPR Program to perform Licensed-Covered-Activities.

41. Members are not legally entitled to perform Licensed-Covered-Activities in violation of PC's Exclusive Software License.

42.  Deerfield benefits when Members utilize software of the CPR Program to perform Licensed-Covered-Activities.

43.  Deerfield is aware that utilizing software of the CPR Program to perform Licensed-Covered-Activities violates PC's Exclusive Software License and PC's property rights.

44.  Performing Licensed-Covered-Activities requires a license to PC's software.

45.  PC's software, Point Boundaries, competes with the software of the CPR Program that performs Licensed-Covered-Activities.

46.  Sales of Point Boundaries are negatively impacted by the CPR Program provided software that performs Licensed-Covered-Activities in violation of PC's ESL.

47.  The goodwill of PC is negatively impacted by Deerfield's conduct.

*III. Deerfield's Actions Involving Points*

48.  Members earn Points for stays at the Deerfield and are able to redeem Points for stays at the Deerfield.

49.  Deerfield acknowledges that Members are permitted to exchange Points earned at Deerfield for reward points provided by Third-Party Programs, which are reward programs other than the CPR Program.

50. Deerfield acknowledges that Members are permitted to exchange reward points of Third-Party Programs for Points under the CPR Program.

51. Deerfield is aware that some Points redeemed for stays at the Deerfield by Members Points that members previously exchanged from reward points of Third-Party Programs for Points using software of the CPR Program.

52. Deerfield knows that software is used for Members earning reward points of Third-Party Programs for Stays at the Deerfield under the CPR Program; and is financially compensated when Members redeem Points for stays at Deerfield.

53.  Some Members exchange Points earned at Deerfield for reward points of Third-Party Programs.

54.  Members staying at Deerfield earn Extras for some stays at the Deerfield.

55. Redeeming Points for stays at the Deerfield incentives the Members to stay at the Deerfield instead of staying at a competing Deerfield for which no Points are able to be redeemed. The transferability of Points to and from Third Party Programs has a value to Members and an added value to Deerfield.

56. Members earning of Extras for stays at Deerfield incentives the Members to stay at the Deerfield instead of staying at a competing Deerfield for which no Extras are earned. Extras include earning quantities of reward points for Third-Party Programs.

57. Deerfield is aware that the CPR Program permits Members to transfer Points into reward points of Third-Party Programs, where transfer refers to an ability to exchange quantities of the Points for quantities of reward points of Third-Party Programs.

58. Deerfield is aware that the CPR Program permits Members to transfer reward points of Third-Party Programs into Points, where transfer refers to an ability to exchange quantities of the reward points of Third-Party Programs for Points.

59. Deerfield also receives reward points (e.g., Choice Privilege Reward Points) from its customers. These Choice points are products of value provide to customers in commerce; and customers purchase Choice Points with the transferability option to obtain points in other programs.

60. Transferring Points to and from Third Party Programs by Members via software of the Web Site violates PC's Exclusive Software License.

61. A value is associated with Members receiving the PC End-User Patent Release; and PC charges Members $4.95 for a licensed copy of Point Boundaries software, which includes PC End-User Patent Release.

62. Each Member incurs a cost to transfer Points to and from Third Party programs via the software of the CPR Program of $4.95, else each member violates PC's Exclusive Software License and the Patents when transferring Points to and from the Third-Party Programs.

63. The patents and/or license has an economically recognized value based on that patent's exclusionary potential until a judicial determination is made that that patent is invalid or that a disputed product does not infringe the patent in question. This applies to Deerfield, the Members, and Third-Party Programs.

64. PC's Exclusive Software License has an economically quantifiable exclusionary potential that applies to Members transferring Points to and from Third Party Programs using software of the CPR Program.

*IV. Supporting Example*

65. A real-world example of the operation of the CPR Program as applied between Deerfield, its customers, and PC is illustrated by transactions conducted in July 2018 by Mr. Brian K. Buchheit. In candor and full disclosure to the Court, Mr. Buchheit is a listed inventor of the Patents and minority shareholder of PC.

66. The example provided is another Choice franchisee, Tropical Paradise Resorts, LLC. d/b/a Rodeway Inn & Suites ("Rodeway" or "franchisee"), however, Deerfield utilizes the same system and processes that are consistent with the CPR Program.

67. On July 18, 2018, Mr. Buchheit became a Choice Privilege Member and initially, Mr. Buchheit possessed zero-member points.

68.   On July 18, Mr. Buchheit enrolled in the United Mileage plus program that initially had a point balance of zero.

69.   The Choice program provided extras to members such that a stay at a qualified hotel by a member earns 100 miles with participating carriers in addition to earning hotel points for a stay. Other options for extras exist, such as earning Amtrak points.

70.   Using Choice's website, Mr. Buchheit linked his United mileage plus program account to Choice's account and specified miles as the extra to be earned for select Choice hotel stays.

71.   On July 18, 2018, Mr. Buchheit used Choice's website to search for hotels in the area; and from the search results, Rodeway was selected (a similar selection of Deerfield is available).

72.   The reservation was made online and a reservation receipt received.

73.   The franchisee benefited and/or was compensated from Buchheit's reservation.

74.   Mr. Buchheit checked into the franchisee on July 18, 2018.

75.   During check in, Mr. Buchheit confirmed with the reservation agent 1) his stay would earn Choice points that Mr. Buchheit intended to convert into United miles, 2) Mr. Buchheit's stay at the franchisee Rodeway on July 18th would concurrently earn him United miles, 3) Mr. Buchheit planned on converting the Points received from the stay to miles, 4) Mr. Buchheit used the Web Site to book the room; and 5) regarding the actions taken via the Web Site for the stay the franchisee relating that Mr. Buchheit, "did it right." The agent conveyed indications that the conversion of points to miles was permitted and part of the advantages or perks of staying at the franchise.

76.   Mr. Buchheit received a receipt for his stay and he directly earned one hundred (100) United miles and eight hundred and seventy (870) Choice Points.

77.   Transferring points from Choice to United requires a minimum of five thousand (5000) points.

78.   Mr. Buchheit purchased points with U.S. dollars from the Choice website to reach this minimum threshold. The franchisee also benefited from this purchase.

79.   After the purchase, Mr. Buchheit possessed 5870 Choice points. The website was used to transfer 5870 points to 1174 United miles.

80.   The Choice website is adopted and used by Deerfield that permits these transactions.

81.   Mr. Buchheit stayed at the franchise on July 18, 2018 to earn miles on United's program, which was facilitated and condoned by both Choice and the franchise.

82.   Mr. Buchheit also joined the Amtrak membership program. Initially, Mr. Buchheit possessed zero Amtrak member points; however, Mr. Buchheit's Amtrak's rewards account is linked to Mr. Buchheit's Choice rewards account. Through Amtrak's Website, Mr. Buchheit purchased five thousand (5000) Amtrak points for $188.50.

83.   These five thousand Amtrak points were converted to fifteen thousand (15,000) Choice points. A stay at Rodeway between July 15, 2018 and September 15, 2018 costed 12,000 Choice points.

V.  *Applications and Harms to Point Conversions*

84.   The transactions and events referenced above is a typical customer interaction and other customers of Choice; and Deerfield conducts similar transactions.

85.   Through Choice's website which is used and promoted by Deerfield, Mr. Buchheit is able to stay at the franchise using points converted across program boundaries from Amtrak whereby Deerfield receives financial compensation.

86.   Deerfield is contractually bound per franchise agreements with Choice to permit transactions consistent with those Mr. Buchheit conducted with the franchisee.

87.   Mr. Buchheit's actions are in violation of the PC's Exclusive Software License and in violation of the Patents; and Deerfield is benefitting from PC's exclusive property rights at PC's expense.

88.   The Patents are numerous and the violations evident from the respective claims as interpreted and understood through the examples presented herein.

89.   As a first non-limiting example, Mr. Buchheit's actions are/were infringements of U.S. patent 9, 704, 174 titled (**Ex.; 132; 133**).

90.   As a second non-limiting example, Mr. Buchheit's actions are/were infringements of U.S. patent 9,251,528.  (**Ex. 134; 135**).

91.   As a third non-limiting example, Mr. Buchheit's actions are/were infringements of U.S. patent 8, 763, 901. (**Ex. 136; 137**).

92.   Point Conversions possess the Exclusive Software License that performs functions within scope of the Patents, like those referenced above (or Licensed-Covered-Activities); and Deerfield is aware of same.

93.   The software utilized by Mr. Buchheit for the above transactions was accessed through Choice.com, which is used by Deerfield. This software is not Point Boundaries nor is it owned or developed by PC.

94.   On July 30, 2018 Mr. Buchheit purchased a copy of the Point Boundaries software for $4.95 which cured the deficiencies with the hotels' reward points and monetarily benefited PC consistent with what PC permits. (**Ex. 138; 139**; **140**)

## COUNT I – UNJUST ENRICHMENT

PC realleges and incorporates by reference the common allegations above and those factual allegations above as if fully referenced herein and states:

95.   Deerfield accepts cross-platform points from its patrons that were converted with software, other than PC's software.

96.   PC, as possessor of an exclusive software and property right for software that converts reward points across program boundaries, has and continues to confer benefits upon Deerfield.

97.   Deerfield benefits from software that performs Licensed-Covered-Activities; a right exclusively held by PC. Deerfield is using PC's property and technology and has conferred numerous benefits upon Deerfield to PC's detriment.

98.    Deerfield, despite receiving the benefit, has not compensated PC for its enrichments and benefits unjustly received from PC's exclusive rights. These benefits unjustly bestowed upon Deerfield are not only monetary, but also intangible benefits as well like customer loyalty and goodwill; and other business interests.

99.   Deerfield encourages customers to utilize unauthorized software for performing Licensed-Covered-Activities and benefits from the same; thus, Deerfield benefits from Deerfield advocated actions of customers bestowed from PC's exclusive property rights.

14

100. Notwithstanding the monetary gain, Deerfield benefits include but are not limited to offering rooms at effective lower rates by avoiding sales taxes, tourist development taxes, resort taxes, or tourist's taxes through the use of providing Deerfield stays for reward point expenditures.

101. Further, an additional annual tax would be due to the State of Florida from Deerfield for stays by customers expending points assuming these stays were paid in cash instead; thus, Deerfield receives another benefit from their unlawful use of PC's property.

102. The innovations of Point Conversions IP rights have been published and disclosed to the public. Deerfield receives the benefit of PC's technology and innovation via these publications and receives the benefits of using Point Conversion's exclusive IP rights. Deerfield has knowledge of the benefits conferred; and voluntarily accepted and retained the benefits takes advantage of these benefits without compensating Point Conversions.

103. Deerfield is aware and has knowledge of PC's software, licenses, and exclusive IP rights; as well as, the benefits which have been and continue to be bestowed upon them relating to unauthorized software that performs Licensed-Covered-Activities thus reaping benefits of PC's exclusive IP rights without compensating PCs for these benefits.

104. PC has paid JB consideration in exchange for the exclusive IP rights; and the circumstances of Deerfield benefiting from violating PC's exclusive rights without compensating PC are such that it is inequitable for the Deerfield to retain the benefit without paying fair value for it.

105. Deerfield is conferred benefits with PC's technology and property rights and benefitting from synergistic partnerships from the choice privilege partners or mall which

PC is not compensated and is inequitable to do so for which Deerfield is aware (i.e., the Choice Extra Rewards).

106.  Additionally, PC as an exclusive licensee, benefits from the grant of a license regardless of whether or not an infringing product is actually created and/or being used. That is, entities will likely procure a license in order to avoid uncertainty and litigation.

107.  Through PC's exclusive license, PC also gains the benefit of ensuring that no other entity has the ability to create competing products that practice the patents at issue; yet this is what Deerfield is unlawfully benefitting from.

108.  As a direct result of Deerfield continuing to accept, exchange, and use allegedly transferrable points having transferability conditioned on unlicensed software performing Licensed-Covered-Activities, Deerfield has been unjustly enriched at the expense of the PC and PC has suffered damages in an amount to be determined at trial, plus legal interest thereon according to proof.

## COUNT II – CONVERSION

PC realleges the facts and common allegations above as if fully set forth herein and states:

109.  PC has exclusive rights to software that performs Licensed-Covered-Activities, which is a property right of the PC.

110. Deerfield is unlawfully exercising dominion control of PC's property and/or services by permitting a method or medium to perform Licensed-Covered-Activities; and exerted dominion and control contrary to PC's property right.

111.  Deerfield accepts and provides allegedly transferrable points to and from customers for stays at Deerfield and Deerfield is compensated.

112. These converted points have been unlawfully obtained through unauthorized software that performs Licensed-Covered-Activities; and all benefits and compensation emanating from the Licensed-Covered-Activities exclusively belongs to PC.

113. Deerfield's use of converting points across program boundaries as part of conducting Licensed-Covered-Activities is inconsistent with Point Conversions exclusive property rights.

114. Deerfield is aware of PC's exclusive software license, the property rights owned by PC that is unlawfully being taken and converted by Deerfield, and Deerfield is receiving compensation and other intangible benefits and interest like goodwill or offering a service they are otherwise not permitted to do at PC's expense.

115. Deerfield is aware and on notice of PC's property, but continues in the taking of PC's property without authority and for their own benefit that harms Point Conversions who would otherwise receive additional licensing revenue from end-users; who instead use Deerfield's advocated software in violation of PC's property right allowing Deerfield to profit at PC's expense.

116. Deerfield is receiving an unlawful benefit or windfall at PC's expense as PC has and continues to pay consideration for its exclusive software license and has developed its software based on this technology.

117. Deerfield has unlawfully obtained pecuniary and intangible profits and the property of PC which has caused Point Conversions monetary and intangible damages.

118. As a direct result of the conversions of points across program boundaries, which are Licensed-Covered-Activities as conducted through an unlicensed software (i.e.,

software that lacks PC's exclusive rights for converting points across program boundaries) for which Deerfield unlawfully takes, accepts, and uses, Deerfield continues to benefit from property and rights that do not belong to Deerfield while PC continues to be harmed and damaged as those rights are inconsistent with PC's ownership in them.

WHEREFORE, PC asks the Court for judgment in its favor against Deerfield, for damages, together with its court costs, and further relief the Court deems fit and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Point Conversions, LLC., pray that this Court enter judgment in Point Conversions, LLC.'s favor against Defendant, Deerfield Hotel One, LLC.; for damages in an amount to be determined at trial along with costs; and anything further the Court deems just and proper under the circumstances.

## JURY DEMAND

Point Conversions requests a trial by jury on all issues so triable.

DATED: June 30, 2020.

**FERGUSON LAW, P.A.**
Attorney for Plaintiff
1323 Southeast 3rd Avenue
Fort Lauderdale, Florida 33316
T – (954) 256 – 5646
F – (954) 256 – 5655
Service: Service@FergusonLawPA.com
E-Mail: Wayne@FergusonLawPA.com

*/s/ Kenneth W. Ferguson*
Kenneth W. Ferguson, Esq.
FBN: 98950

18